IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRUCO LIFE INSURANCE COMPANY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION 4:17−CV−02795 |
| | § | |
| BLANCA MONICA VILLARREAL, | § | |
| | § | |
| Defendant. | § | |

PLAINTIFF PRUCO LIFE INSURANCE COMPANY'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Pruco Life Insurance Company ("Pruco" or "Plaintiff") files this First Amended Complaint against Defendant Blanca Monica Villarreal ("Villarreal" or "Defendant") and respectfully shows as follows:

PARTIES

1. Pruco is an Arizona corporation with its principal place of business in New Jersey.

2. Blanca Monica Villarreal is an individual who, on information and belief, is a citizen of Mexico. Villarreal is doing business in Texas. Villarreal has represented in her claim form to Pruco that her residence in Mexico is Paseo Del Pregonero #37, Colinas Del Sur, 01610 Alvaro Obregon, Mexico City, Mexico. However, and alternatively, in a letter to another insurance carrier from attorneys who had represented Villarreal, the attorneys identified Villarreal's address with a different postal code, or Calle Paseo Del Pregonero No. 37, Col. Colinas Del Sur, C.P. 01430 Alvaro Obregon, D.F., Mexico City, Mexico. Villarreal may be served at her residence, as may be correct, or wherever she may be found. Service on this Defendant may be effectuated, including through the 1965 Convention on the Service Abroad of Judicial and Extra-Judicial

Documents in Civil or Commercial Matters, commonly known as the Hague Service Convention. Service is requested.

JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between Pruco and Villarreal.

4. The Court has personal jurisdiction over Villarreal. Villarreal does business in Texas and maintains contacts sufficient to confer jurisdiction. *See* Tex. Civ. P. & Rem. Code § 17.042. Pruco's claims or actions against Villarreal arise out of transactions, communications, and conduct in Texas. Villarreal is seeking recovery under a Texas life insurance policy, issued in Texas, and made with Pruco through a broker in Texas. The policy is on a Texas form tailored for use in Texas. An applicant for life insurance met with Carlos Sisniega ("Broker Sisniega"), an insurance broker in Texas, and through the broker in Texas applied for a life insurance policy with Pruco in the name of Eduardo Gonzalez Rosendi (the "Applicant"). The Applicant completed and returned the Application in Texas. (The application for the policy dated September 10, 2014 may be referred to herein as the "Application.") The Applicant made the actionable representations in the Application, which are discussed in more detail below, in Texas.[1]

5. In reliance on the presumed veracity of the statements in the Application and accompanying certified financial statements, Pruco issued a life insurance policy naming Eduardo Gonzalez Rosendi in the amount of $16 million on or about September 10, 2014. The Applicant received the policy in Texas and made the initial premium payment, as well as subsequent payments, to Pruco through Broker Sisniega in Texas. Through communications to Broker

[1] Pruco incorporates the allegations in the background and causes of action sections below as if set forth fully herein.

Sisniega when Broker Sisniega was in Texas, Villarreal represented that Rosendi died on or about December 29, 2016. Villarreal made claims on the Texas policy from Pruco through Broker Sisniega in Texas as Villarreal's designated agent. Villarreal has coordinated communications with Pruco regarding the claim through Broker Sisniega in Texas.

6. As set forth in more detail below, misrepresentations to Pruco have been made both through the application and the claims process in Texas.

7. Venue is proper in this Court, including under 28 U.S.C. § 1391(c)(3) because Villarreal is not resident in the United States and so may be sued in any judicial district.

BACKGROUND

8. The Applicant completed both a preliminary application (on or about July 24, 2014) and the application for the policy (on or about September 10, 2014) for a life insurance policy with Pruco in the name of Eduardo Gonzalez Rosendi. The Applicant met with Broker Sisniega in Texas; the Application (as well as the preliminary application) was made through Broker Sisniega in Texas; and the Applicant completed the Application (as well as the preliminary application) in Texas. As stated in the Application, the Applicant represented that his name was Eduardo Gonzalez Rosendi, that he was a legal resident of Mexico, and that he had been a resident of the United States for one year.

9. The Applicant specifically represented in the Application that his earned annual income was $1.8 million. The Applicant further represented in the Application that he had "other income" annually of $3.5 million, including unearned annual income of $2.5 million. The Applicant further represented in the Application that his net worth was $70,150,000. The Applicant further represented in the Application that his net worth was comprised of $48,900,000 in non-business net worth and $21,250,000 in business related assets.

10. To support these representations about his financial status, the Applicant provided purported certified financial statements prepared by a person described as a certified public accountant, Carlos Diaz Barranco. The Applicant further represented in the Application that his current employer was an entity named Interactive Four and that his occupation was "business owner managerial." In addition, although not in the Application, the Applicant represented through Broker Sisniega that the Applicant was the CEO of Comercializadoro Gonzalez Rosendi, which purportedly had been founded by the Applicant's father and was a leader in the acquisition, packaging, and distribution of fresh fruits and vegetables in Mexico, as well as doing business in the United States.

11. The Applicant also represented in the Application that he had no existing life insurance at the time of the Application. As his beneficiary under the policy, the Applicant designated a woman named Mayendi Arcos Delgado, who was identified as a "non-relative" in the Application, and whom the Applicant had represented as his "significant other." The Applicant also identified his residence address as Cerrada de Abedules, Cuernavaca Morelos 52300, Mexico.

12. The Application further provided:

> Any policy issued on this application shall not take effect until after all of the following conditions are met:
>
> > A payment equal to the full first required premium is received by the Company within the lifetime of the proposed insured …
> >
> > The Owner has personally received the policy during the lifetime of and while the health of the Proposed Insured is as stated in this application.

13. Moreover, the Application included the following "Fraud Warning":

> Any person who knowingly and intentionally gives false or deceptive information when completing an application for insurance or filing a claim for the purpose of defrauding an insurance company may have committed fraud, or may have violated state law.

14. Relying on the representations and statements in the Application and attachments, Pruco issued its Texas policy no. L9108762 in the amount of $16 million insuring the life of Rosendi effective as of September 10, 2014. Pursuant to the terms of the Application, Mayendi Arcos Delgado was designated as the only beneficiary under the policy. The policy was delivered to the Applicant, with a copy of the Application attached, in Texas.

15. On or about November 16, 2016, the beneficiary under the policy was changed. The new beneficiaries "in order of priority" were designated as Villarreal, a Class 1 Beneficiary who was identified as Rosendi's wife, and Alda Andris Vargas Villarreal ("Alda"), a Class 2 Beneficiary who was identified as Rosendi's step son.

16. On or about December 29, 2016, Rosendi is alleged to have died.

17. Under the policy, "due proof that the Insured died in the term period" must be provided to Pruco for payment of the policy proceeds.

18. On or about January 19, 2017, Villarreal, through Broker Sisniega, reported to Pruco that Rosendi had died. On or about February 8, 2017, Villarreal submitted claim documents under the policy to Pruco through Broker Sisniega. In support of the claim, Villarreal submitted a claim form, agreeing that:

> I have read and agree to sections 1 through 7 and the Claim Fraud Warnings included with this form on page 9. By signing this form, I certify that the information that I have provided is true and complete.

19. The Claim Fraud Warnings agreed to by Villarreal include the following:

> [A]n insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto.

20. Pruco has diligently conducted an investigation of Villarreal's claim under the policy. Based on this investigation, Pruco has discovered serious discrepancies between the financial and other information provided by the Applicant in the name of Rosendi and information about the alleged deceased Rosendi. By way of example only, while the Applicant represented in the Application he had earned annual income of $1.8 million, annual other income of $3.5 million, including unearned annual income of $2.5 million, Pruco has discovered that the Rosendi who reportedly died had worked for 21 different companies from 1985 through 2007; that he had worked for several years as a security guard for various companies; and that he was fired from his last reported job in 2007, where his reported income had been $233.97 pesos per day. From 2008 through 2016, he did not file a tax declaration for salaries or wages with the Mexican government. These misrepresentations concerning the Applicant's annual income are material and go directly to the risk of Pruco in insuring the Applicant. *See Vasquez v. ReliaStar Life Ins. Co.*, No. 14–12–01115–CV, 2014 WL 1267171, at **3-4 (Tex. App.—Houston [14th Dist.] Mar. 27, 2014, no pet.) (misrepresentation in life insurance application was material when insured represented annual income of $150,000 but did not receive any income except social security benefits).

21. In addition, the Applicant represented in the Application that he had net worth of $70,150,000 million (comprised of $48,900,000 million in non-business assets and $21,250,000 in business related assets). However, Villarreal has acknowledged that the Rosendi who purportedly died did not have any known bank accounts or investments and did not own any real estate.

22. As discussed above, the Applicant provided certified financial statements in support of his financial status in the Application. Carlos Diaz-Barranco ("Purported Accountant Diaz-Barranco"), the asserted "certified public accountant" who admittedly signed the financial

statements, is the brother of Rosendi's first wife. Through its investigation, Pruco has discovered that the professional identification number that appears for Purported Accountant Diaz-Barranco on the financial statements does not belong to him, but to another person. Moreover, Purported Accountant Diaz-Barranco is not licensed as a public accountant in Mexico.

23. In fact, Purported Accountant Diaz-Barranco denied having seen Rosendi for over the past 20 years and denied preparing or knowing anything about the financial statements that Rosendi supplied with his Application. Rather, Purported Accountant Diaz-Barranco reported that he simply signed the statements at the behest of his sister's current husband (the sister being Rosendi's wife as of the Application date) in connection with an unknown real estate transaction. Again, these misrepresentations about the Applicant's net worth are material. *See Vasquez*, 2014 WL 1267171, at **3-4 (misrepresentation in life insurance application was material when insured represented net worth of $2.4 million but had no assets).

24. The Applicant identified himself as an owner of an entity named Interactive Four. However, Pruco's investigation has determined that Interactive Four is a shell company that showed no income for the years 2013 through 2015, that Rosendi is not a shareholder, and that the person at the address for Interactive Four did not know Rosendi. Again, this representation goes directly to Rosendi's financial status and stability and also is material.

25. The Applicant designated Mayendi Arcos Delgado as his sole beneficiary in the Application. During the course of Pruco's investigation, however, it was represented that Arcos Delgado denied any knowledge of Rosendi. Whether or not the beneficiary designated to receive $16 million under a life insurance policy actually knows the insured is information that is material to the issuance of the policy and the existence or absence of the insurable interest required for valid coverage.

26. Pruco's investigation results previously described raise serious questions about whether the person who is purported to have died is the same person as the Applicant, including based on all the inaccuracies discussed above. The Applicant represented himself to be a wealthy and successful businessman with a substantial net worth and income. However, as discussed above, these representations regarding net worth and income are belied by the results of Pruco's investigation. In addition, although the Applicant represented that he was an owner of Interactive Four, Rosendi is not. Although the Applicant represented that he was the CEO of a successful produce acquisition, packaging, and distribution company operating in Mexico and the United States, Rosendi, according to Villarreal, did not own any warehouses or transportation equipment. The job history and background of the Rosendi who reportedly died, including multiple employers for low-paying jobs and no reported taxable income after 2007, is totally at odds with that reported by the Applicant. In addition, totally inconsistent with the Applicant, who represented that he ran two major Mexican companies, Rosendi's present wife maintains that she has limited knowledge, if any, of Rosendi's employment, friends, family, or prior living arrangements.

27. While the Applicant presented a passport and visa, Villarreal has maintained that she is unaware of the location of any of Rosendi's identification documents. The Applicant did not provide an effective residential address for Rosendi. While the Applicant represented that he had no other life insurance, Rosendi has been discovered to have previously taken out a policy in the amount of $10 million with another insurance company. Moreover, while the Applicant identified Mayendi Arcos Delgado as his "significant other" and as the original beneficiary of a $16 million insurance policy, Arcos Delgado denies that she even knows Rosendi.

28. Pruco's investigation has also raised serious questions about whether Rosendi has actually died that remain unanswered or unresolved, including contradictions and gaps in the chain

of custody of the body identified as Rosendi after his alleged death. For example, the body was allegedly first taken from Rosendi's home directly to Cortes Funeral Services, where the body allegedly was embalmed. However, Pruco's investigation has determined that Cortes several months before the alleged date had moved from the Cortes Funeral Services location where the body was supposedly taken. As a result, Cortes Funeral Services was not at and did not have access to that location in December 2016, and the body could not have been taken there. In addition, Pruco's investigation also has determined that, even if Cortes had been operating at the funeral home facility location as represented on December 30, 2016, the facility did not have space or capability for embalming services.

29. After supposedly being embalmed at Cortes Funeral Services, the body was then allegedly taken immediately to be cremated at noon on December 30, 2016, within about a half day from when it was supposedly discovered. The ashes were then reportedly picked up by Cortes and taken to J. Garcia Lopez Funeral Home, where a one-hour vigil was being held, and given to Villarreal. Under this version of the story the ashes were veiled. However, through its investigation, Pruco has discovered that, contrary to the story in which the body was cremated before the vigil at J. Garcia Lopez Funeral Home, the vigil was closed casket and representatives at J. Garcia Lopez Funeral Home never saw the body or any ashes. By themselves, such contradictions have made it impossible for Pruco to verify Rosendi's alleged death.

30. Additionally, serious discrepancies in the story leading up to Rosendi's purported death serve to exacerbate these concerns. By way of example only, Villarreal and Dr. Sergio Guadalupe Escorza-Arregui, the doctor who certified the death, have provided inconsistent and contradictory accounts of the discovery of Rosendi's alleged death. Villarreal, who reportedly married Rosendi on or about October 18, 2016, has herself provided different accounts, claiming

variously that she discovered Rosendi dead at their home and thereafter called Dr. Escorza and the funeral home; or, alternatively, that the doctor called the funeral home. For his part, Dr. Escorza stated, variously, that Villarreal called him to examine Rosendi's body; or that, as opposed to Villarreal, Rosendi himself called Dr. Escorza, stating that he did not feel well; that Dr. Escorza arrived at Rosendi's house at the same time as Villarreal; or that, instead, he arrived at Rosendi's house, knocked without answer, was outside the house until Villarreal arrived later, and that they went into the house together and found Rosendi dead.

31. Despite having only seen Rosendi twice before, Dr. Escorza reported that Rosendi called him at about 8:30 p.m. on the day he purportedly died, which then required Dr. Escorza to leave the hospital he managed at night to drive from that hospital, which was located at least 45 minutes away, to Rosendi's house, where he then purportedly waited outside until Villarreal arrived and opened the door. Interestingly, Dr. Escorza certified that Rosendi died at 8:12 p.m., 18 minutes before Rosendi allegedly had called Dr. Escorza in the first place.

32. Pruco has attempted to follow up on this investigation, but Pruco's investigation has been impeded by Villarreal's reluctance to cooperate, including by hindering Pruco's efforts at obtaining information from various third parties. Pruco also has requested identification documents for Rosendi from Villarreal, such as Rosendi's passport and driver's license, but Villarreal claims they are not at the house and that she does not know the whereabouts of these or any other type of legal identification for Rosendi. On the other hand, Dr. Escorza represented that Rosendi's passport and birth certificate were at Rosendi's house, as he allegedly used them as the bases to certify Rosendi's death. Villarreal also has not provided requested information about her husband's background, business, income, or family, among other things. For example, Villarreal has denied knowledge of Rosendi's business activities, other than to state that he was involved in

the purchase of legumes from local villagers, and any information about his income. Villarreal denies having any copies of Rosendi's financial statements or tax returns. She denies any knowledge of where Rosendi's office was located. She denies knowing any member of Rosendi's family, knowledge that Rosendi was married previously or had a family before his marriage to Villarreal, or even knowing any address for Rosendi before Villarreal and Rosendi were married.

33. In short, in the summer of 2014, an Applicant under the name of Rosendi obtained $16 million in life insurance and designated a beneficiary who denies knowing Rosendi. Contrary to the representations in the Application and attached financial statements submitted by the Applicant to obtain the policy, Rosendi appears to have had little income or net worth. The beneficiary under the policy was then changed to Villarreal in November 2016, and about a month later, Rosendi purportedly died. As a result of the false information provided in the Application and attached financial statements, the conflicting and insufficient information submitted in connection with Villarreal's claim, and Villarreal's interference with Pruco's investigation, Pruco has expended significant time, resources, and expenses in investigating and addressing Villarreal's claim. Under the circumstances, Pruco seeks relief as follows.

## Causes of Action

34. Pruco incorporates by reference all of the allegations above as if set forth fully herein. Pruco asserts the following together and in the alternative:

35. Rescission If Rosendi was the Applicant who completed the Application, then Rosendi intentionally made numerous material misrepresentations in that Application and attachments. Such misrepresentations include, without limitation, those set forth above with respect to his financial condition, net worth, earned annual income, unearned annual income, other annual income, employment, and ownership of Interactive Four. Rosendi made such

misrepresentations with the intent that Pruco rely on them, and in reliance on such misrepresentations, Pruco issued the Texas policy. In the event that Rosendi was the Applicant for the policy, Pruco refuses to be bound by the policy, judicially tenders the premiums paid, and requests that the Court rescind the policy and declare it null and void as of the date of its issuance. Together and in the alternative, based on such misrepresentations, Pruco seeks a declaration that Pruco may deny Villarreal's claims.

36. Declaratory Judgment: Incontestability Additionally, alternatively, and without waiver of the foregoing, Pruco's policy contained the following "incontestability" language, consistent with the requirements of Tex. Ins. Code § 1101.006.

> Except for non-payment of premium, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date.

37. Under an exception to "incontestability" in Tex. Ins. Code § 705.104, however, an insurer may contest validity or enforceability based on misrepresentations in an application if "it is shown at the trial that the misrepresentation was: (A) material to the risk; and (B) intentionally made." *Massachusetts Mut. Ins. Co. v. Mitchell*, 859 F.Supp.2d 865, 870 (S.D. Tex. 2012) (citing Tex. Ins. Code § 705.104, stating that "[t]he Texas Insurance Code explicitly allows insurers to rescind life insurance policies even after two years if the insurer proves material, intentional misrepresentations were made in obtaining the policy."); Andrew C. Whitaker, *Update on Texas Law on the Rescission of Insurance Policies*, 13 J. Tex. Ins. L. 23, 24 (2015) ("In turn, section 705.104 (which applies only to life insurance policies) permits an insurer to rescind such a policy more than two years after its issuance by showing … the misrepresentation was material to the risk and 'intentionally made.'"). As set forth above, the misrepresentations made in the Application and attachments were material to the risk and intentionally made. *See Vasquez*, 2014 WL 1267171,

at *4 (finding that insured "understood the correlation between financial information and the obtainable amount of life-insurance coverage because [she] misrepresented [her] financial information on the insurance application").

38. Villarreal argues that the incontestability clause required under Tex. Ins. Code § 1101.006(a) bars claims for rescission. As a result, Pruco requests the Court to adjudicate, pursuant to 28 U.S.C. § 2201, the following actual justiciable controversy:

> That in the circumstances of this case, Tex. Ins. Code § 705.104 allows for rescission by Pruco of the life insurance policy at issue and that such rescission is not barred by Tex. Ins. Code § 1101.006(a) or any incontestability clause.

39. Declaratory Judgment: Due Proof or Final Proof There is an actual justiciable controversy between the parties as to whether the proceeds are payable to Villarreal. Pruco requests the Court to adjudicate, pursuant to 28 U.S.C. § 2201, the following issues:

(a) That Pruco has not received "due proof" that the Applicant who applied for and was insured under the Pruco life insurance policy died in the term period as required under the policy for payment of the proceeds;

(b) That Pruco has no obligation to pay the proceeds of the policy unless and until it obtains "due proof" that the Applicant who applied for and was insured under the Pruco life insurance policy at issue died in the term period as required under the policy for payment of the proceeds; and

(c) That Pruco has not received all information necessary to secure final proof of loss to enable it to notify Villarreal in writing of its acceptance or rejection of the claim.

40. Declaratory Judgment: False Information Additionally, alternatively, and without waiver of the foregoing, Pruco requests the Court to adjudicate, pursuant to 28 U.S.C. § 2201, the following issues:

(a) That false information materially related to Villarreal's claim was provided by Villarreal, and, as a result, Pruco may deny Villarreal's claim; and

(b) That Villarreal has concealed, for the purpose of misleading, information concerning a fact or facts material to Villarreal's claim, and, as a result, Pruco may deny Villarreal's claim.

41. Declaratory Judgment: Different Applicant Additionally, alternatively, and without waiver of the foregoing, Pruco requests the Court to adjudicate, pursuant to 28 U.S.C. § 2201, the validity and/or enforceability of the policy and Pruco's obligations thereunder in the event that:

(a) The Applicant who completed the Application to obtain the policy is not the Rosendi who purportedly died;

(b) The Rosendi who purportedly died did not consent in writing to the policy being taken out in his name and/or designate the owners and beneficiaries of the policy; and/or

(c) The owners and/or beneficiaries of the policy did not have an insurable interest in the life of the Rosendi who purportedly died at the inception of the policy or at the time of purported death.

Prayer

As a result, Pruco requests that Villarreal be served with process and required to answer in the time and manner prescribed by law, and that upon hearing Pruco be awarded judgment against

Villarreal consistent with the relief set forth herein, including, together and in the alternative, for declaratory judgment and rescission, for costs, for pre-judgment and post-judgment interest as may be allowed by law or equity, compounded as allowed by law, and for such other and further relief in law or in equity, general or special, to which Pruco may be justly entitled.

Respectfully submitted,

DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.

By: /s/ James Eloi Doyle
James Eloi Doyle
Texas State Bar No. 06093500
jdoyle@drhrlaw.com
440 Louisiana, Suite 2300
Houston, Texas 77002
Telephone: (713) 228-5100
Facsimile: (713) 228-6138

OF COUNSEL:

DENTONS US LLP

Laura Leigh Geist (pro hac vice motion to be filed)
laura.geist@dentons.com
1999 Harrison Street, Suite 1300
Oakland, CA 94612
Telephone: (415) 882-2424
Facsimile: (415) 882-0300

Kelly D. Fair (pro hac vice motion to be filed)
kelly.fair@dentons.com
One Market Plaza
Spear Tower, 24th Floor
San Francisco, CA 94105
Telephone: (415) 882-0117
Facsimile: (415) 267-4198

DOYLE, RESTREPO, HARVIN & ROBBINS, L.L.P.

Ronald J. Restrepo

Texas State Bar No. 16791300
rrestrepo@drhrlaw.com
Christopher N. Hackerman
Texas State Bar No. 00796686
chackerman@drhrlaw.com
440 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 228-5100
Facsimile: (713) 228-6138