IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRUCO LIFE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION 4:17-CV-02795 |
| | § | JURY |
| BLANCA MONICA VILLARREAL, | § | |
| | § | |
| Defendant. | § | |

## <u>DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Respectfully Submitted,

**DALY & BLACK, P.C.**

*/s/ John Scott Black*
John Scott Black
Texas Bar No. 24012292
Richard D. Daly
Texas Bar No. 00796429
Melissa Waden Wray
Texas Bar No. 24008614
Walt Cubberly
Texas Bar No. 24069557
2211 Norfolk, Suite 800
Houston, Texas 77098
(713) 655-1405
(713) 655-1587 facsimile
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com
wcubberly@dalyblack.com
ecfs@dalyblack.com

ATTORNEYS FOR DEFENDANT/
COUNTER-PLAINTIFF BLANCA
MONICA VILLARREAL

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

NATURE AND STAGE OF THE PROCEEDING....................................................1

STATEMENT OF THE ISSUES................................................................................2

SUMMARY JUDGMENT STANDARD ..................................................................3

SUMMARY OF THE ARGUMENT .......................................................................4

FACTUAL BACKGROUND ....................................................................................6

    The Policy..................................................................................................................6

    Rosendi's Death........................................................................................................6

    The Claim and "Investigation" ..............................................................................10

    The Lawsuit ............................................................................................................12

    Villarreal's Motion ................................................................................................13

ARGUMENT & AUTHORITIES ..........................................................................13

I.       Pruco's Rescission Cause of Action and Fraud-in-the-Application Defense Fail as a Matter of Law ..........................................................................................14

        A.   Under Texas Law, a Life Insurance Policy Becomes Incontestable for Any Reason Except Nonpayment of Premiums After It Has Been in Effect for Two Years During the Insured's Lifetime .............................................................14

        B.   Because Rosendi Paid All Premiums and Died More Than Two Years After the Policy Was Issued, the Policy Is Incontestable and Pruco Cannot Rescind the Policy or Assert Its Fraud Defense.................................................................17

II.      Pruco's Contention that Rosendi Is Alive, Or That It Needs More Time to Determine Whether Rosendi Is Dead, Is Wholly Meritless..........................................18

        A.   Pruco Incurred a Payment Obligation When Villarreal Provided *Timely* Evidence to Establish Rosendi's Death With "Reasonable Certainty" .................................19

     B.  Pruco Cannot Demonstrate a Genuine Issue of Material Fact With Regard to Whether Rosendi Is Alive ......................................................................................20

     C.  Pruco Should Not Be Given More Time to Try to Scrape Together Evidence Its Thirteen-Month Investigation Could Not Yield .....................................................22

III.    Pruco's Remaining Requests for Declaratory Relief Are Completely Unfounded and Unsupported by Evidence..............................................................................................22

IV.    Pruco Breached the Contract As a Matter of Law.......................................................23

V.    Pruco Owes Villarreal Statutory Interest Under the Prompt Payment Act ................23

PRAYER..........................................................................................................................................25

# TABLE OF AUTHORITIES

**STATUTES**

Texas Insurance Code § 1101.006 ........................................................................1, 6, 14

Texas Insurance Code § 705.104 ..............................................................................1, 16

Texas Insurance Code § 1101.011 ........................................................................11, 19, 20

Texas Insurance Code § 542.056 ................................................................................24

Texas Insurance Code § 542.058 ................................................................................24

Texas Insurance Code § 542.060 ................................................................................24

Article 4591 of Texas Revised Civil Statutes .............................................................17

**RULES**

Federal Rule of Civil Procedure 56 ..............................................................................3

**CASES**

*American Nat'l Ins. Co. v. Conestoga Settlement Trust*, 442 S.W.3d 589
    (Tex. App.—San Antonio 2014, pet. denied) .................................................15

*American Nat'l Ins. Co. v. Welsh*, 22 S.W.3d 1063
    (Tex. Comm'n App. 1930, judgm't adopted) .........................................16, 17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................3, 21

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 537 (5th Cir. 2005) ...............................4, 21

*Cannata v. Catholic Diocese of Austin*, 700 F.3d 169 (5th Cir. 2012) ...........................3

*Cardenas v. United of Omaha Life Ins. Co.*, 731 F.3d 496 (5th Cir. 2013)......................14, 15, 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................3

*Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574 (5th Cir. 2009) ...........19

*Connecticut Gen. Life Ins. Co. v. Kornegay*, 93 S.W.2d 164
    (Tex. Civ. App.—Beaumont 1936, writ dism'd) .............................................19

*Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*, 795 F.2d 496 (5th Cir. 2015)..................24

*Duffie v. United States*, 600 F.2d 362 (5th Cir. 2010) ....................................................3

*Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573 (5th Cir. 2015)....................................23

*Jones v. Adam's Mark Hotel*, 840 F. Supp. 66 (S. D. Tex. 1993) ...................................3

*Kansas Life Ins. Co. v. First Bank of Truscott*, 78 S.W.2d 584
    (Tex. Comm'n App. 1935, judgm't adopted) ...........................................14, 15

*Killian v. Metropolitan Life Ins. Co.*, 166 N.E. 798 (N.Y. 1929)..................................17

*National Bank of Commerce v. Williams*, 84 S.W.2d 691 (Tex. 1935).........................14

*North Am. Life & Cas. Co. v. Wolter*, 593 F.2d 609 (5th Cir. 1979)............................19

*Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936 (Tex. 1984).........................................18

*Sossamon v. Lone Star State of Tex.*, 560 F.3d 316 (5th Cir. 2009) ...............................3

*Trent v. Wade*, 776 F.3d 368 (5th Cir. 2015) ................................................................3

*Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770 (5th Cir. 2004) ...........18

*Wells v. Minnesota Life Ins. Co.*, ___ F.3d ___, ___, 2018 WL 1417647, at *3
    (5th Cir. Mar. 22, 2018) .....................................................................19

## BOOKS

TEX. LAW REVIEW, THE GREENBOOK: TEXAS RULES OF FORM 35–36 (13th ed. 2015).................14

## AGENCY BULLETINS

Tex. Dep't Ins., *Contestable and Suicide Periods in Converted Policies*,
    Commissioner's Bull. # V-0074-98 (Oct. 14, 1998)
        *available at http://www.tdi.texas.gov/bulletins/1998/b-0074-8.html*..........................15, 16

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRUCO LIFE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION 4:17-CV-02795 |
| | § | JURY |
| BLANCA MONICA VILLARREAL, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TO THE HONORABLE LEE H. ROSENTHAL:

Defendant/Counter-Plaintiff Blanca Monica Villarreal ("Villarreal") files her motion for partial summary judgment against Plaintiff/Counter-Defendant Pruco Life Insurance Company ("Pruco") and, in support thereof, would respectfully show the Court the following:

## NATURE AND STAGE OF THE PROCEEDING

This is a life insurance dispute. Pruco sued Villarreal in this Court on September 15, 2017. (Dkt. # 1) Pruco's live complaint includes a cause of action for rescission of the policy at issue and seeks declaratory judgment with regard to multiple defenses to liability under the policy. (Dkt. # 3, ¶¶ 35–41) Specifically, Pruco seeks declarations that: (1) Section 705.104 of the Texas Insurance Code ("Section 705.104") allows for rescission of the policy and such rescission is not barred by Section 1101.006(a) ("Section 1101.006(a)") of the Texas Insurance Code; (2) Pruco has not received "due proof" that the insured died during the policy period, does not have a payment obligation until such proof is received, and has not received all information necessary to secure final proof of loss to enable it to accept or reject the claim; (3) Villarreal provided, or concealed in order to mislead, information materially related to her claim, and Pruco may deny the claim as a

result; (4) the applicant who completed the insurance application was not the Eduardo Gonzalez Rosendi ("Rosendi") who "purportedly" died, the Rosendi who "purportedly" died did not consent to the policy's being taken out in his name and/or designate beneficiaries, and/or the beneficiaries lacked an insurable interest in the life of the Rosendi who "purportedly" died. (Dkt. # 3, ¶¶ 35-41)

Villarreal answered and counterclaimed. In her counterclaim, she sued Pruco for breach of contract, violations of Chapter 541 of the Texas Insurance Code ("Chapter 541") and the Texas Deceptive Trade Practices Act ("DTPA"), and violations of the Texas Prompt Payment of Claims Act ("Prompt Payment Act"). (Dkt. # 8, ¶¶ 83–96). In response to Villarreal's counterclaim, Pruco reasserted the various defenses implicated in its request for declaratory relief. (Dkt. # 17)

Villarreal seeks summary judgment on Pruco's rescission claim and declaratory judgment action. Villarreal also seeks summary judgment on her breach of contract claim and her claim for violations of Chapter 542 of the Texas Insurance Code (the "Prompt Payment Act"). If the motion is granted, only Villarreal's Chapter 541 and DTPA statutory bad faith causes of action will remain for trial.

## STATEMENT OF THE ISSUES

I.      Whether Pruco's rescission cause of action and fraud in the application defense fail as a matter of law because the Policy is incontestable under Texas and Fifth Circuit law.

II.     Whether Pruco can demonstrate a genuine issue of material fact with regard to its contention that Rosendi is alive, or that it needs more time to determine whether Rosendi is dead.

III.    Whether Pruco breached the Policy as a matter of law.

IV.     Whether Pruco's breach entitles Villarreal to Statutory Interest and Attorneys' Fees Under the Prompt Payment Act.

## SUMMARY JUDGMENT STANDARD

Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law" either in part or in full. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015). An issue is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). An issue or fact is material if its resolution in one party's favor might affect the outcome of the case under governing law. *See id.* Only "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude . . . summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jones v. Adam's Mark Hotel*, 840 F. Supp. 66, 67 (S. D. Tex. 1993).

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact, *see Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012), but need not produce evidence to do so, *see Celotex*, 477 U.S. at 325. The United States Supreme Court has explained that "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* If the movant carries her burden, the nonmovant cannot simply rest on its pleadings; rather, the burden shifts, and the nonmovant "'must identify specific evidence in the record and articulate the manner in which that evidence supports'" its claims or defenses. *See Duffie v. United States*, 600 F.2d 362, 371 (5th Cir. 2010). Unfortunately for Pruco, raising "some metaphysical doubt as to the material facts" will not carry this burden, nor will conclusory

allegations, unsubstantiated assertions, or a mere scintilla of evidence. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 537, 540 (5th Cir. 2005).

## SUMMARY OF THE ARGUMENT

Villarreal's husband, Eduardo Gonzalez Rosendi, was an insured under a $16,000,000.00 life insurance policy issued in Texas by Pruco (the "Policy"). Villarreal was the beneficiary. More than two years after the Policy was issued, after paying all premiums owed under the Policy, Rosendi died and Villarreal made a claim under the Policy. For more than a year, Pruco has refused to pay the claim and instead – after many months of "investigation" – sued Villarreal, maintaining that it is still investigating the claim while simultaneously seeking rescission and asking the Court for various declarations based on multiple defenses to coverage. Chief among Pruco's allegations are fraud in the application and a purely speculative assertion – without any evidence whatsoever to support its conjecture – that Rosendi *may* still be alive.

Pruco's rescission claim lacks merit. Texas law and Fifth Circuit authority are clear: If a life insurance policy has been in effect for two years or more during the insured's lifetime and all premiums have been paid, the insurance company is barred from raising fraud or misrepresentation in the application as a defense and must pay the benefit upon the insured's death. The Policy contains the required incontestability clause, and it is undisputed that when Rosendi died, his Pruco life insurance policy had been in effect for more than two years and he had paid all premiums. Pruco cannot seek rescission as a matter of law, and its request for a declaration that it can assert a fraud in the application defense must fail; any alleged misstatements by Rosendi in the application are irrelevant.

What *is* relevant is that Rosendi is dead. While Pruco undoubtedly wishes it had evidence to the contrary, it does not. If it did, it would have denied the claim, or provided that evidence

during discovery. It has not. The summary judgment evidence establishes as a matter of law that Pruco has received proof of death and that Pruco has sufficient information to accept or deny the claim. Thus, Pruco's request for a declaration regarding whether it has received "due proof" of Rosendi's death should be denied as a matter of law.

Pruco's remaining defenses, and thus the balance of their requests for declarations, smack of desperation and are devoid of supporting evidence. Consequently, they must also fail. Specifically, Pruco cannot offer any evidence to demonstrate that Villarreal provided misinformation materially related to her claim or concealed information in order to mislead Pruco, nor can Pruco offer the Court any evidence that some person other than Rosendi completed the application or designated beneficiaries.

Villarreal is also entitled to summary judgment on her breach of contract claim because the summary judgment evidence establishes the existence of a valid contract, a breach of the contract by Pruco, and damages caused by the breach. In turn, summary judgment on Villarreal's Prompt Payment Act claim is warranted.

Accordingly, the Court should grant Villarreal's motion for summary judgment against Pruco on its rescission cause of action and its suit for declaratory judgment and the Court should grant Villarreal's motion for summary judgment on her breach of contract claim and Prompt Payment Act claim. The Court should award Villarreal the $16,000,000.00 owed under the Policy, statutory interest under the Prompt Payment Act, pre- and post-judgment interest, and attorneys' fees to be determined by the Court at a hearing and allow Villarreal's Chapter 541 and DTPA claims to proceed to trial.

**Factual Background**

*The Policy*

On August 26, 2014, Pruco issued Rosendi a life insurance policy in the amount of $16,000,000. (Ex. 1 at Pruco 000003, 000011) The Policy, which was a form document drafted by Pruco that was not negotiated, contains an incontestability clause providing that "[e]xcept for non-payment of premium, [Pruco] will not contest this contract after it has been in force during the Insured's life time for two years from the issue date." (Ex. 1 at Pruco 000011) The incontestability clause is mandated by Texas law, which requires that every life insurance policy issued in Texas "must provide that a policy in force for two years from its date of issue during the lifetime of the insured is incontestable, except for nonpayment of premiums." TEX. INS. CODE § 1101.006(a). The Policy's annual premium was $25,205.00. (Ex. 1 at Pruco 000003) Rosendi made and Pruco accepted premium payments in 2014, 2015, and 2016. (Ex. 2 at Pruco 0065–68)

*Rosendi's Death*

In 2016, Villarreal became pregnant with Rosendi's child, and the two married on October 18 of that year. (Ex. 3; Ex. 4 at ¶¶ 3–4) Less than thirty days later, on November 16, Rosendi designated Villarreal as the Policy's beneficiary. (Ex. 5)

About two weeks later, on December 2, Rosendi went to Hospital Del Especialidades Dr. Belisario Domingos because he was having chest pain. (Ex. 6 at ¶ 6) While Rosendi was there, he visited with Dr. Sergio Escorza ("Dr. Escorza"), who works at the hospital. (*Id.*) Although Dr. Escorza did not treat Rosendi that day, they had known each other for several years, and Dr. Escorza had treated Rosendi for stomach problems just a few weeks earlier. (Ex. 6 at ¶¶ 4–5) When Rosendi's treatment concluded, the hospital released him, and he went home.

Late in the afternoon on December 29, 2016, Villarreal asked her driver, Isaac Diaz ("Diaz") to take her to the market. (Ex. 7 at ¶ 5; Ex. 4 at ¶ 6) Around 7:00 that evening, while his

6

wife and Diaz were gone to the market, Rosendi called Dr. Escorza and reported chest pains and difficulty breathing. (Ex. 6 at ¶ 7) Rosendi requested a house call. (Ex. 6 at ¶ 7) Dr. Escorza agreed to come check on Rosendi and drove toward Rosendi's home. (Ex. 6 at ¶ 8) When Dr. Escorza got there, he knocked on the door but no one answered. (Ex. 6 at ¶ 9) After a while, Villarreal and Diaz, returning from the market, pulled up to the house and saw Dr. Escorza. (Ex. 6 at ¶ 10; Ex. 4 at ¶ 7; Ex. 7 at ¶ 6) Villarreal exited the car and approached Dr. Escorza. (Ex. 6 at ¶ 10; Ex. 4 at ¶ 7; Ex. 7 at ¶ 6) She shook his hand and asked him what he was doing at the house. (Ex. 6 at ¶ 10; Ex. 4 at ¶ 7; Ex. 7 at ¶ 6) Dr. Escorza said that Rosendi had called him. (Ex. 6 at ¶ 10; Ex. 4 at ¶ 7; Ex. 7 at ¶ 6). Villarreal unlocked the front door and asked Dr. Escorza to wait in the living room while she went upstairs to check on her husband. (Ex. 6 at ¶ 10 Ex. 4 at ¶ 7; Ex. 7 at ¶ 6) In her bedroom, she saw Rosendi lying in bed on his right side, wearing his light-gray pajamas. (Ex. 4 at ¶ 7) Villarreal was frightened when she entered the bedroom and Rosendi did not respond, so she screamed. (Ex. 4 at ¶ 7) When he heard the scream, Dr. Escorza ran upstairs and saw Villarreal standing over Rosendi. (Ex. 6 at ¶¶ 11–12; Ex. 4 at ¶ 7; Ex. 7 at ¶ 6) Dr. Escorza examined Mr. Rosendi and determined that he was dead. (Ex. 6 at ¶¶ 14–15; Ex. 8) Dr. Escorza assessed the cause of death as a heart attack and also found that Rosendi had abdominal sepsis. (Ex. 6 at ¶ 15; Ex. 8)

Because Villarreal, who was in the third trimester of her pregnancy when Rosendi died, was overwhelmed by the death of her husband, Dr. Escorza wrote her a prescription to calm her and asked Diaz to fill it. (Ex. 6 at ¶ 16; Ex. 7 at ¶ 7) When Diaz returned from the pharmacy, Villarreal told him that Rosendi was dead. (Ex. 7 at ¶¶ 8–9; Ex. 4 at ¶ 11) Villarreal, who is not from Mexico City and had not lived there very long, asked Diaz to help her make funeral arrangements. (Ex. 4 at ¶ 11; Ex. 7 at ¶ 10)

Around 9:00 that night, Dr. Escorza left Rosendi's house to get a death certificate from the Ministry of Health, a necessary procedure for declaring Rosendi dead. (Ex. 6 at ¶ 17) When Dr. Escorza got to the Ministry of Health, they told him that it being the tail end of 2016, they were out of 2016 forms. (Ex. 6 at ¶ 18) They gave him a 2013 form to use instead. (Ex. 6 at ¶ 18) Dr. Escorza filled out the form and returned to Rosendi's house. (Ex. 6 at ¶¶ 19–20; Ex. 49 at Rene Cortes 00022)

Back at the house, Diaz had made his way upstairs. (Ex. 7 at ¶ 16) He saw Rosendi lying in the bed on his right side, wearing his light-gray pajamas. (Ex. 7 at ¶ 16) It was clear to him that Rosendi was dead. (Ex. 7 at ¶ 16) Diaz remembered that his son had played soccer with the son of René Morale Cortés ("Cortés"), who Diaz knew to be in the funeral business. (Ex. 7 at ¶ 12; Ex. 9 at ¶ 6) Diaz called Cortés and said that his boss had died and asked him for help in dealing with Rosendi's corpse. (Ex. 9 at ¶ 7; Ex. 7 at ¶ 12) Cortés said he would help and asked for the address. (Ex. 9 at ¶ 8; Ex. 7 at ¶ 12)

Dr. Escorza returned to the house and gave Diaz the death certificate. (Ex. 7 at ¶ 13; Ex. 6 at ¶ 20) He then asked about funeral arrangements and left. (Ex. 7 at ¶ 13; Ex. 6 at ¶ 20)

About forty minutes after he got off the phone with Isaac Diaz, Cortés arrived in his hearse, a gray minivan. (Ex. 9 at ¶¶ 10–11; Ex. 7 at ¶ 12) Diaz gave Cortés the original copy of the death certificate that Dr. Escorza had given him. (Ex. 9 at ¶ 12; Ex. 7 at ¶ 14) Cortés told Diaz that he would help take care of things and got to work. (Ex. 9 at ¶ 13; Ex. 7 at ¶ 14) He went upstairs and into the bedroom where Rosendi's corpse lay. (Ex. 9 at ¶ 14) Using the death certificate and the copy of Rosendi's passport that Diaz had given him, Cortés identified the corpse as the dead body of Eduardo Gonzalez Rosendi. (Ex. 9 at ¶ 16)

While Mr. Cortés was at the house working, Villarreal decided that she wanted to cremate Rosendi's body and to have a wake. (Ex. 4 at ¶ 13; Ex. 7 at ¶ 15)

When Cortés finished his work, he helped carry Rosendi's blanket-draped body to his minivan and then drove it to Funerales Cortés, where he put the corpse in a casket. (Ex. 9 at ¶ 17–18; Ex. 7 at ¶ 17) At some point that night, he called Albín Alberto Casteñeda ("Casteñeda"). (Ex. 9 at ¶ 20; Ex. 10 at ¶ 4) Casteñeda works at Funerales Hispanoamericana, S.A. de C.V., and embalms bodies. (Ex. 10 at ¶ 3) Cortés has every corpse he handles embalmed because otherwise, after a few hours, the corpse will start to smell and leak liquids. (Ex. 9 at ¶ 22) Cortés told Casteñeda that he had a body that he needed to embalm and asked if he would do it. (Ex. 10 at ¶¶ 5–6) Casteñeda said he would and drove to Funerales Cortés. (Ex. 10 at ¶ 6) Casteñeda keeps his embalming equipment in his car, and when he showed up with his embalming equipment at Funerales Cortes that night, Cortés greeted him and led him inside. (Ex. 10 at ¶¶ 8–9; Ex. 9 at ¶ 23) Cortés showed Casteñeda the death certificate that Diaz had given him and, because the body showed no sign of trauma and the paperwork was in order, Casteñeda embalmed the body. (Ex. 9 at ¶¶ 24–25; Ex. 10 at ¶¶ 10–17). As he often does, Casteñeda embalmed the body in the coffin in which it was lying by making an incision of no more than three centimeters in the femoral artery and draining two liters of fluid from the body and injecting a liter and a half of liquid preservatives into it. (Ex. 10 at ¶¶ 11–13; Ex. 9 at ¶ 26) When he was finished, Casteñeda gave Mr. Cortés a certificate affirming that the body was embalmed and left. (Ex. 10 at ¶¶ 15–18; Ex. 9 at ¶ 28; Ex. 49 at Rene Cortes 000015)

Later that day, Cortés took Rosendi's body to Palo Alto Crematorium. (Ex. 9 at ¶ 29) A few hours later, he returned and picked up the ashes. (Ex. 9 at ¶ 30) He took the ashes to J. Garcia Lopez, a funeral home, and gave them to Villarreal and left. (Ex. 9 at ¶ 30)

That night, around 6:30 p.m. or 7:00 p.m. people began arriving for the funeral. (Ex. 7 at ¶ 20; Ex. 4 at ¶ 16) About ten to fifteen people showed up, including Villarreal, Dr. Escorza, and Diaz. (Ex. 6 at ¶ 21; Ex. 7 at ¶ 20; Ex. 4 at ¶ 16) The wake ended around 8:00 p.m., when Ms. Villarreal started feeling ill. (Ex. 4 at ¶ 16)

### The Claim and "Investigation"

Villarreal, who does not speak English and had never filed a life-insurance claim before (Ex. 4 at ¶¶ 2, 17), asked Carlos Sisniega ("Sisniega"), the insurance agent who sold Rosendi the Policy, to help her make a claim (Ex. 11). By January 19, 2017, Villarreal had made the claim, and Pruco wrote her and acknowledged that she was the primary beneficiary. (Ex. 11) Pruco also asked her to send the following documents: (1) an official death certificate, "issued by the local Registrar in the country of death;" (2) a translated copy of the death certificate; (3) a completed Life Insurance Death Benefits Claim form; (4) the Policy, if available; (5) an IRS Form W-8; and (6) an executed Health Insurance Portability and Accountability Act authorization. (Ex. 22) With the exception of the Policy, of which she did not have a copy at the time, Villarreal began sending Pruco the requested documents on February 9. (Ex. 12) This included a copy of the certified death certificate, which Purco has had for over a year. (Ex. 12 at Pruco 000097)

Four days later on February 13, 2017 – more than thirteen months ago – Pruco asked Diligence International Group ("Diligence") to begin a death verification investigation. (Ex. 13; Ex. 14) Diligence immediately began prying into every detail of Rosendi's life and hunting for him. Diligence has continued to do so for the last thirteen months. As one Diligence investigator wrote to another, Diligence's goal was to do a "very broad and deep" investigation so it could provide Pruco and the other insurance company who sold Rosendi a life insurance policy "with

the necessary elements to be able to reject the claims." (Ex. 15) After all, the other insurance company had "been the best of clients for" Diligence. (Ex. 15)

On February 17, 2017, Sisniega sent Pruco the last of the documents it had requested from Villarreal so it could adjust her claim. (Ex. 16) That same day, Pruco told Sisniega that it normally takes Pruco six to eight weeks to accept or deny a claim, but that it could take longer in this case. (Ex. 16; Ex. 17; Ex. 18; Ex. 19) Five weeks later, on March 24, Pruco told Sisniega there "is nothing further required from [Villarreal] at this time." (Ex. 25; Ex. 21) Pruco never told Villarreal or Sisniega that it was investigating a potential fraud. (Ex. 22; Ex. 23; Ex. 24)

The Policy says that Pruco "will pay the beneficiary the death benefit described in this contract promptly if [Pruco] receive[s] due proof that the Insured died in the term period." (Ex. 1 at Pruco 000001) This provision violates the Texas Insurance Code, which requires every life insurance policy issued in Texas to state that the insurer will pay the death benefit within two months of receiving proof of death of the insured and the right of the claimant to receive the death benefit. *See* TEX. INS. CODE § 1101.011. The Policy lacks statutorily-mandated language.

Expecting that Pruco would abide by the Policy and Texas law, Villarreal and Sisniega periodically reached out to Pruco and implored it for an update on its investigation (Ex. 25; Ex. 26; Ex. 27; Ex. 28; Ex. 29; Ex. 30; Ex. 31; Ex. 32; Ex. 33) or, at the very least, simply a copy of the Policy (Ex. 34) Rather than provide Villarreal with an update or take a position on whether it was accepting or denying the claim, Pruco would send Villarreal what it calls "delay letters" (Ex. 17), asking Villarreal for patience while it conducted its investigation but not giving her any information (Ex. 23; Ex. 24) As for a copy of the Policy, Pruco told Sisniega that Villarreal would have to get a court order to get a copy of the insurance policy of which she was a properly designated beneficiary. (Ex. 35)

On August 17, 2017, Wayne Radtke, a broker on the Policy, told Pruco in no uncertain terms that it should pay the claim "as of this moment." (Ex. 36) Pruco neither paid the claim nor denied it. (Ex. 37 at 32, RFA 11) On September 12, 2017, Sisniega called Pruco and asked what more Pruco needed to resolve the claim. (Ex. 30 at Pruco 000609) He requested an answer on whether Pruco would pay the claim and complained that the Pruco's claims examiner was not returning his phone calls. (Ex. 30 at Pruco 000609) The next day, Pruco called him back and told him he could expect an answer within two weeks regarding whether Pruco would pay the claim. (Ex. 30 at Pruco 00611)

### The Lawsuit

Two days later on September 15, 2017, Pruco – anticipating a lawsuit for unreasonable delay – preemptively and improperly sued Villarreal in this Court, seeking rescission of the Policy or a declaration that it does not owe Villarreal the death benefit under the Policy. (Dkt. # 1) Pruco alleges both that Rosendi lied during the application process about the extent of his wealth and that Rosendi *may* not be dead. (Dkt. # 3)

On December 1, 2017, Villarreal filed her answer and counterclaim. (Dkt. # 8)

Pruco and Diligence's investigation has not been aimed at discovering the truth, but at giving Pruco the ammunition it wanted in order to deny the claim. (Ex. 15) Diligence and Pruco have summarily ignored evidence indicating that Rosendi is dead. Diligence never talked to Casteñeda, the man who embalmed the body, even though it said it needed to. (Ex. 38). And when Diligence spoke to Diaz, it never asked him about the night Rosendi died or seeing him dead. (Ex. 7 at ¶ 21) Instead, Pruco and Diligence have spent over a year lunging at shadows in their quest to scrape up enough evidence for Pruco to deny the claim. Their investigation has included witness interviews, close scrutiny of Rosendi's medical records, and meticulous review of background

information – all of which are tangential to Rosendi's death. When it comes to issues that do not involve Rosendi's death, Pruco's investigation has been "scorched-earth." Indeed, Diligence has produced seven reports to Pruco in its effort to gather enough information to allow Pruco to deny the claim. (Exs. 39–45) None of these reports contains any evidence that Rosendi is alive. (Ex. 46 at 8–9, Interrogatory 9 and RFP 79) If Pruco or Diligence had turned up any such evidence, Pruco would have denied the claim and pleaded this evidence in its original filing. It hasn't. Pruco is still "investigating" the claim today and, remarkably, has neither accepted nor denied it.

### *Villarreal's Motion*

The purpose of this motion is to curb Pruco's dilatory tactics and clear the air of the smoke screen Pruco has created with its cries of fraud. Pruco accepted more than $75,000.00 in premiums from Rosendi knowing full well that Texas law and the terms of the Policy make it incontestable, except for nonpayment of premiums, after two years. Then, when Rosendi died and his widow made a claim, Pruco refused to pay and instead sued her, throwing up every defense to coverage it can muster and hoping one will stick. None will, and Villarreal's motion for summary judgment should be granted.

### ARGUMENT & AUTHORITIES

Villarreal moves for summary judgment, asking the Court to rule that as a matter of law, Pruco cannot rescind the contract, nor is it entitled to any of the four declarations it seeks. Villarreal further asks the Court to rule that Pruco breached the contract as a matter of law and that she is entitled to statutory interest under the Prompt Payment Act. Villarreal meets and exceeds her summary judgment burden.

# I. Pruco's Rescission Cause of Action and Fraud in the Application Defense Fail as a Matter of Law

Pruco's complaint alleges a rescission cause of action and seeks a declaration that rescission based on fraud in the application is not barred by Section 1101.006(a). (Dkt. # 3, ¶¶ 34–38) In other words, Pruco seeks to rescind the Policy and avoid its obligation thereunder because of allegedly fraudulent statements made by Rosendi in the application process. Pruco's rescission effort is squarely defeated and summary judgment is warranted because Texas law, Fifth Circuit precedent, and the Policy uniformly hold that the Policy became incontestable two years after its issue – months before Rosendi died.

## A. Under Texas Law, a Life Insurance Policy Becomes Incontestable for Any Reason Except Nonpayment of Premiums After It Has Been in Effect for Two Years During the Insured's Lifetime

Like many states, Texas law requires life insurance policies to contain certain provisions. *See generally* TEX. INS. CODE §§ 1101.001–.0013. Section 1101.006, aptly-titled "Incontestability," provides, in relevant part, that "a life insurance policy must provide that a policy in force for two years from its date of issue during the lifetime of the insured is incontestable, except for nonpayment of premiums." TEX. INS. CODE § 1101.006; *see Cardenas v. United of Omaha Life Ins. Co.*, 731 F.3d 496, 500 (5th Cir. 2013).

This has been the law in Texas for decades. In 1935, the Texas Commission of Appeals decided *Kansas Life Ins. Co. v. First Bank of Truscott*, 78 S.W.2d 584, 586–87 (Tex. Comm'n App. 1935, judgm't adopted),[1] which is often cited as the seminal case on this issue. In *Truscott*, the

---

[1] The opinion was adopted by the Texas Supreme Court and therefore carries the authority of a Texas Supreme Court decision. *See National Bank of Commerce v. Williams*, 84 S.W.2d 691, 692 (Tex. 1935) ("[W]e wish to say that the Supreme Court is now adopting all opinions of the commission as the opinions of the court itself. These adopted opinions are given the same force, weight, and effect as the opinions written by the members of the Supreme Court itself."); TEX. LAW REVIEW, THE GREENBOOK: TEXAS RULES OF FORM 35–36 (13th ed. 2015).

defendant insurance company sought to void a life insurance policy based on fraud in the application process. *See id.* at 585. The Court held, citing a predecessor statute to Section 1106.006, that the statute and the policy's incontestability clause "literally and plainly" meant that once the incontestability period expired, there could be "no contest of the right to recover on the contract, except for nonpayment of premiums." *Id.* at 586. The Court said:

> Fraud, of whatever nature, in procuring or inducing the execution of the contract is not named as a ground on which recovery may be contested. In other words, the statute and policy provide that after the expiration of the period prescribed there may be no contest at all of the validity or the binding effect of the policy, with certain specified exceptions which may serve as reasons or grounds for contest, and fraud is not one of the exceptions.

*Id.*

Almost 100 years later, the law regarding incontestability remains the same. In 2014, the San Antonio Court of Appeals reaffirmed that a challenge to the validity of a life insurance policy after the expiration of the contestability period on the basis of fraud in the application "is not permitted." *American Nat'l Ins. Co. v. Conestoga Settlement Trust*, 442 S.W.3d 589, 596 (Tex. App.—San Antonio 2014, pet. denied). The court cited the language in *Truscott* quoted above and observed that "[a]s was the case in 1935, the modern Texas statute regarding the incontestability of life insurance policies does not provide an exception for fraud." *Id.* The court went on to say, "[a]lthough the *Truscott* decision is from 1935, it is still recognized as the common law of Texas for the proposition that the 'bar to contestability applies even if the insured intentionally made a material misrepresentation in the policy application.'" *Id.* at 596–97 (citing *Cardenas*, 731 F.3d at 500). Notably, the Texas Supreme Court declined to review the court's decision in *Conestoga*.

Even the Texas Department of Insurance ("TDI") recognizes the steadfast doctrine. In a 1998 Commissioner's Bulletin issued to all insurers licensed to write life insurance in Texas, TDI said, "In Texas, except for nonpayment of premiums, life insurance policies become incontestable

after they are in force for a maximum of two years." Tex. Dep't Ins., *Contestable and Suicide Periods in Converted Policies*, Commissioner's Bull. # V-0074-98 (Oct. 14, 1998) *available at http://www.tdi.texas.gov/bulletins/1998/b-0074-8.html*.

Given the venerability of the incontestability rule, it is no surprise that the Fifth Circuit recognizes it as the law of Texas. *See Cardenas*, 731 F.3d at 500. In *Cardenas*, decided in 2013, the court said, citing Section 1101.006, "if an insured survives the two-year 'contestability period' following the issuance of a policy, then the policy will become incontestable for any reason except nonpayment of premiums." *Id.* The court specifically pointed out, citing *Truscott*, that the bar to contestability "applies even if the insured intentionally made a material misrepresentation in the policy application." *Id.*

Pruco contends that Section 705.104 applies and somehow trumps Section 1101.006 and the well-established law of Texas as recognized by the Fifth Circuit. (Dkt. # 3, ¶ 38) It does not.

Section 705.104 says:

A defense based on a misrepresentation in the application for, or in obtaining, a life insurance policy on the life of a person in or residing in this state is not valid or enforceable in a suit brought on the policy on or after the second anniversary of the date of issuance of the policy if premiums due on the policy during the two years have been paid to and received by the insurer, unless:

(1) the insurer has notified the insured of the insurer's intention to rescind the policy because of the misrepresentation; or

(2) it is shown at the trial that the misrepresentation was:

      (A) material to the risk; and
      (B) intentionally made.

TEX. INS. CODE § 705.104.

Section 705.104 is the latest of several recodifications of language that has been part of Texas's statutory scheme since 1903. *See American Nat'l Ins. Co. v. Welsh*, 22 S.W.3d 1063, 1064–

65 (Tex. Comm'n App. 1930, judgm't adopted). In 1930, the Texas Commission of Appeals held

that the predecessor statute to Section 705.104 in effect at the time, article 4591 of Texas Revised

Civil Statutes, did not apply to life insurance policies issued after December 31, 1909. *See id.* at

1064–65. The Texas Supreme Court has never reversed course and held that the Section 705.104

language upon which Pruco relies applies to life insurance policies issued after 1909.

Section 705.104 does not apply in this case, and with good reason. The public policy behind

the incontestability rule is clear: It is unfair to make a widow or a bereaved person answer questions

that she cannot answer because the person who could have answered them is dead. *See Killian v.

Metropolitan Life Ins. Co.*, 166 N.E. 798, 800 (N.Y. 1929). And so insurance companies, after

doing their underwriting and the due diligence that is part of that, have two years to investigate

further, after which they cannot complain about misstatements or fraud. *See id.* In *Killian*, then-

Chief Judge Cardozo said:

> The value of a clause declaring a policy incontestable lies to no slight degree in the
> definiteness of the protection accorded to the holder. The good that it promises is
> in part a state of mind. After the lapse of two years the insured is no longer to be
> harassed by the fear that the policy will be avoided by interested witnesses asserting
> in later days that there was a disclaimer long ago. After a like lapse the beneficiaries
> are no longer to be subjected to the risk of forfeiture through notices or warnings
> that may be hard to disprove when the insured is in his grave. Alike for insured and
> for beneficiaries, there is to be the peace of mind that is born of definiteness and
> certainty. The clause, in effect, if not in form, is a statute of limitations, established
> by convention, and like the statute is directed to remedies in court.

*Id.* at 800.

**B.      Because Rosendi Paid All Premiums and Died More Than Two Years After
the Policy Was Issued, the Policy Is Incontestable and Pruco Cannot Rescind
the Policy or Assert Its Fraud Defense**

The Policy at issue in this case contains the statutorily-required incontestability language:

"Except for non-payment of premium, [Pruco] will not contest this contract after it has been in

force during the Insured's life time for two years from the issue date." (Ex. 1 at Pruco 000011)

17

Because it is clear and unambiguous, and it comports with Texas law, the Court must give it its plain meaning. *See Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*, 359 F.3d 770, 773 (5th Cir. 2004); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).

The summary judgment evidence establishes that Rosendi survived the incontestability period (Exhibit 1 at Pruco 000003, 0000011; Ex. 8), and it is undisputed that Rosendi paid all premiums owed under the Policy (Ex. 2 at Pruco 000065–68) Under the Policy, Texas law, and Fifth Circuit precedent, the Policy is incontestable, even assuming *arguendo* that Rosendi made misrepresentations in the Policy application.

Accordingly, the Court should grant summary judgment against Pruco on its rescission cause of action and its request for a declaration that Section 705.104 trumps Section 1101.006 and the law of the State of Texas since at least 1935.

## II.     Pruco's Contention that Rosendi Is Alive, Or That It Needs More Time to Determine Whether Rosendi Is Dead, Is Wholly Meritless

Pruco also seeks a declaration that it has not received "due proof" that Rosendi died during the Policy period and has therefore not incurred a payment obligation, and it asks the Court to declare that it has not received everything it needs to enable it to accept or reject the claim. (Dkt. # 3, ¶ 39) Stated more simply, Pruco suggests that Rosendi is alive and alleges that after a thirteen-month investigation, it needs more information to determine whether that is the case. There is simply no evidence whatsoever to support Pruco's contentions, Pruco cannot demonstrate a genuine issue of material fact, and summary judgment against Pruco with regard to its request for this declaration is appropriate.

**A.    Pruco Incurred a Payment Obligation When Villarreal Provided *Timely* Evidence to Establish Rosendi's Death With "Reasonable Certainty"**

The Policy provides that Pruco must "pay the beneficiary the death benefit described in this contract promptly if [it] receive[s] due proof that the Insured died in the term period." (Ex. 1 at Pruco 00001) This language violates Section 1101.011 ("Section 1101.011") of the Texas Insurance Code, which requires a life insurance policy to "provide that settlement under the policy after the death of the insured will be made not later than two months after the date of receipt of proof of . . . the death; and the right of the claimant to the proceeds of the policy." TEX. INS. CODE § 1101.011.

Although the word "due" should not even be in the clause in light of the statutory requirement, under Texas law, the word "due" in the context of due proof "refers to the time when the proof is to be made rather than the sufficiency of facts to be established by the proof." *See Connecticut Gen. Life Ins. Co. v. Kornegay*, 93 S.W.2d 164, 167 (Tex. Civ. App.—Beaumont 1936, writ dism'd). So, the Policy simply required that Villareal give Pruco *timely* proof of Rosendi's death.

As for "proof," the Policy does not define the term. Under Texas law, an undefined term in an insurance policy is to be attributed its "'plain and ordinary meaning.'" *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d 574, 577 (5th Cir. 2009) (quoting *Gray & Co. Realtors, Inc. v. Atlantic Housing Found., Inc.*, 228 S.W.3d 431, 434 (Tex. App.—Dallas 2007, no pet.)); *see Wells v. Minnesota Life Ins. Co.*, ___ F.3d ___, ___, 2018 WL 1417647, at *3 (5th Cir. Mar. 22, 2018). And, the Fifth Circuit has observed that unless the policy obligates the beneficiary of a life insurance policy to furnish proof of the *cause* of death (Rosendi's Policy does not), "the insurer may only insist that the fact of death be shown with reasonable certainty." *North Am. Life & Cas. Co. v. Wolter*, 593 F.2d 609, 611 (5th Cir. 1979).

Villarreal has given Pruco everything it needs to show that her husband is dead with "reasonable certainty." Indeed, Villarreal gave Pruco everything it required of her to adjust the claim. (Ex. 22; Ex. 12) By March 24, 2017, Pruco told Sisniega that it had all the proof it needed from Villarreal and that there was "nothing further required from [Villarreal] at this time." (Exs. 20–21)

Once it received proof of death from Villarreal, Pruco was obligated under the terms of the contract to pay her "promptly."[2]

### B. Pruco Cannot Demonstrate a Genuine Issue of Material Fact With Regard to Whether Rosendi Is Alive

Pruco has been investigating Villarreal's claim since February 2017. It has paid Diligence more than $10,000.00 thus far. (Ex. 47) Diligence has produced seven reports to Pruco comprising hundreds of pages of documents. (Exs. 39–45) It gave Pruco written updates on its investigation every two weeks. (Ex. 48 at DIG 00022) Diligence's goal has been to give Pruco, its valued customer, the evidence is needs to deny the claim. (*See* Ex. 15) Diligence has failed. After more than thirteen months, neither Diligence nor Pruco has any evidence that Rosendi is alive. If they did, Pruco would have denied the claim by now.

Pruco's discovery responses further underscore the absence of evidence that Rosendi is alive. In response to an interrogatory asking Pruco to identify all facts that support its contention that Rosendi may be alive, Pruco said:

> Pruco objects to this request because it is overly broad and improperly seeks to require Pruco to marshal its evidence. Without limitation, Pruco refers to its investigation including the investigation reports, and documents responsive to Villarreal's Requests for Production Nos. 8, 9, 13, 30, 48, 57, 77, 78, and 79, which will be produced subject to entry of an appropriate protective order and

---

[2] This term likewise violates Section 1101.011 insofar as the statute requires Texas life insurance policies to provide for payment within two months of proof of death. *See* TEX. INS. CODE § 1101.011.

confidentiality agreement, and further refers to its responses to Interrogatories Nos. 5 and 6 above. Pruco refers to "Pruco's description" in response to Question 3 in the parties' Joint Discovery/Case Management Plan in this case. Pruco refers to its First Amended Complaint, including as set forth in Interrogatory No. 6 above. Pruco reserves the right to supplement

(Ex. 46 at 8, Interrogatory 9) In other words, none.

Pruco's contention that it does not have everything it needs to accept or deny the claim is similarly thin. In the same month that Pruco launched its investigation, Pruco requested and Villarreal provided all the documents it said it needed from her, save for the Policy. (Ex. 22) On March 24, 2017, Pruco wrote in a letter to Sisniega, "nothing further [is] required from [Villarreal] at this time." (Ex. 20, Ex. 21) Pruco has had the proof it requested for more than a year. It has never requested anything further, nor should it, because Villarreal has provided it with more than enough evidence to establish Rosendi's death with "reasonable certainty." Pruco did not pay the claim within two months, as the statute requires, nor did it pay "promptly" under any construction of the word, even assuming the contract term were valid.

Pruco has no evidence that Rosendi is alive. Its arguments hang on conjecture, speculation, and hope – not evidence. It cannot satisfy its summary judgment burden as the non-movant by attempting to create "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux*, 402 F.3d at 540 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)) (internal quotation marks omitted). No reasonable jury could return a verdict in Pruco's favor on this issue. *See Anderson*, 477 U.S. at 248.

Likewise, Pruco's contention that it does not have enough information to accept or deny the claim fails as a matter of law. Pruco's never-ending investigation, its demands, and this suit are part of a larger effort to make Villarreal clear some impossible evidentiary hurdle so that it can, at

worst, avoid paying the death benefit for as long as possible and, at best, use this suit as leverage to negotiate a deal with Villarreal for less than the death benefit. The Court should not countenance these tactics and should grant summary judgment against Pruco on its request for a declaration regarding "due proof."

### C. Pruco Should Not Be Given More Time to Try to Scrape Together Evidence Its Thirteen-Month Investigation Could Not Yield

Villarreal anticipates that, in keeping with its efforts to delay paying the claim as long as possible, Pruco will argue that it needs more time for discovery. Pruco has been investigating this claim for more than thirteen months. If Rosendi were alive, the thirteen-month investigation undertaken by Diligence that was focused on finding some evidence to allow Pruco to deny the claim would have done so. It has not. Rosendi is dead, and Pruco will not be able to claw together some new evidence through what remains of discovery that it could not have turned up before. Under the terms of the policy and Texas law, Pruco is out of time, and it must pay Ms. Villarreal the death benefit.

## III. Pruco's Remaining Requests for Declaratory Relief Are Completely Unfounded and Unsupported by Evidence

Pruco also seeks a declaration that Villarreal provided, or concealed in order to mislead, information materially related to her claim and Pruco may deny the claim as a result as well as a declaration that the applicant who completed the insurance application was not the Rosendi who "purportedly" died, the Rosendi who "purportedly" died did not consent to the policy's being taken out in his name and/or designate beneficiaries, and/or the beneficiaries lacked an insurable interest in the life of the Rosendi who "purportedly" died. (Dkt. # 3, ¶¶ 40–41)

There is no evidence to substantiate these defenses to coverage. Pruco cannot meet its summary judgment burden and demonstrate a genuine issue of material fact with regard to either, and summary judgment is proper.

## IV. Pruco Breached the Contract As a Matter of Law

For the same reasons that Pruco's claims fail, Villarreal's breach of contract claim is meritorious as a matter of law.

The elements of breach of contract under Texas law are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015). Texas law places the burden of establishing coverage on the insured and the burden of establishing an exclusion upon the insurer.

It is undisputed that Pruco issued the Policy and that Rosendi paid all premiums. (Ex. 2 at Pruco 000065–68) The summary judgment evidence establishes that Villarreal provided Pruco with proof of Rosendi's death in a timely manner as required by the Policy. (Ex. 1 at Pruco 000001) It is undisputed that Pruco has not paid the death benefit. Because Rosendi's death occurred outside the two-year contestability period, Pruco cannot rescind the Policy or raise fraud in the application as a defense. *See* Part I, *supra*. Likewise, Pruco cannot demonstrate a fact issue with regard to whether it has received "due proof" of Rosendi's death. *See* Part II, *supra*. Nor can it substantiate the other defenses to coverage it has raised. *See* Part III, *supra*. Pruco's failure to pay the death benefit has resulted in actual damages in the amount of $16,000,000.00. (Ex. 1 at Pruco 000003, 000011)

Accordingly, the Court should enter summary judgment in Villarreal's favor on her breach of contract claim.

## V. Pruco Owes Villarreal Statutory Interest Under the Prompt Payment Act

If the Court grants summary judgment on Villarreal's contract claim, it logically follows that summary judgment is appropriate on her Prompt Payment Act claim.

The Prompt Payment Act sets forth a series of deadlines to which insurers must adhere during the claims-handling process. *See Cox Operating, LLC v. St. Paul Surplus Lines Ins. Co.*, 795 F.2d 496, 505 (5th Cir. 2015). In pertinent part, the Prompt Payment Act provides that an insurer must "notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss," TEX. INS. CODE § 542.056(a), and that "if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for . . . more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060," *id.* § 542.058(a). Section 542.060 is the remedial provision, stating:

> If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay . . . , in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees."

*Id.* § 542.060(a). The Fifth Circuit has recognized that violation of *any* of the deadlines in the Prompt Payment Act triggers the accrual of statutory interest under Section 542.060. *See Cox Operating*, 795 F.3d at 508.

If the Court determines that Pruco is not entitled to rescission, not entitled to the declarations it seeks, and, consequently, that it breached the Policy, it will necessarily have found that Pruco violated Section 542.055 by not accepting or rejecting the claim in writing within fifteen days of receiving the necessary information and Section 542.058(a) by delaying payment more than sixty days after receiving such information. Accordingly, the Court should grant summary

judgment on Villarreal's Prompt Payment Act claim and award statutory interest in the amount of 18% from, at the earliest, fifteen days after March 24, 2017 – the date Pruco confirmed in writing that it had everything it needed from Villarreal as well as attorneys' fees in an amount to be determined by the Court after a hearing.

## PRAYER

For these reasons, Villarreal respectfully requests that the Court grant her motion for partial summary judgment in its entirety, granting summary judgment in her favor on Pruco's rescission claim and declaratory judgment action and summary judgment in her favor on her breach of contract and Prompt Payment Act claims and awarding her the $16,000,000.00 owed under the Policy, statutory interest under the Prompt Payment Act, pre- and post-judgment interest, and attorneys' fees to be determined by the Court after a hearing. Villarreal further requests all other relief, general or special, at law or in equity, to which she may show herself entitled.

Respectfully Submitted,

**DALY & BLACK, P.C.**

*/s/ John Scott Black*
John Scott Black
Texas Bar No. 24012292
Richard D. Daly
Texas Bar No. 00796429
Melissa Waden Wray
Texas Bar No. 24008614
Walt Cubberly
Texas Bar No. 24069557
2211 Norfolk, Suite 800
Houston, Texas 77098
(713) 655-1405
(713) 655-1587 facsimile
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com
wcubberly@dalyblack.com
ecfs@dalyblack.com

ATTORNEYS FOR DEFENDANT/
COUNTER-PLAINTIFF BLANCA
MONICA VILLARREAL

## CERTIFICATE OF SERVICE

I certify that on April 11, 2018, a copy of this document was served on all counsel of record through the Court's ECF system in accordance with the Federal Rules of Civil Procedure.

*/s/ Walt Cubberly*
Walt Cubberly