United States District Court
Southern District of Texas
**ENTERED**
October 25, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| PRUCO LIFE INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-2795 |
| | § | |
| BLANCA MONICA VILLARREAL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

In this lengthy, hard-fought, and at times Hollywood-worthy litigation, only one issue remains: Should the court impose monetary sanctions on John Black, Richard Daly, and Daly & Black, P.C. (collectively, "Daly & Black") in addition to the nonmonetary sanctions it has already imposed for their misconduct?[1]  Pruco Life Insurance Company says yes and has moved for $556,877.92 in attorneys' fees and costs as sanctions against Daly & Black.  (Docket Entry No. 330).  Daly & Black oppose the motion.  (Docket Entry No. 342).

Based on the briefing, record, and applicable law, the court denies Pruco's motion for attorney's fees.  The court has already imposed significant nonmonetary sanctions against Daly & Black.  A sanction must be tailored to be as limited as possible to achieve its purpose.  To add an after-the-fact attorneys' fee award to the considerable nonmonetary sanctions already imposed, namely the admission of evidence that would otherwise have been privileged and an adverse-

---

[1] Pruco also sought fees as sanctions from Defendant Blanca Monica Villarreal but later withdrew that portion of its motion.  (Docket Entry No. 352).  Transamerica Life Insurance Company also moved for similar relief but has settled its claim for fees.  (Docket Entry No. 329, 17-2796).  The two cases, one filed by Pruco and the other by Transamerica, proceeded on a coordinated basis.  (Docket Entry No. 9, 17-2796). The citations in this opinion are to the first case, *Pruco Life Insurance Co. v. Villarreal*, No. 4:17-cv-2795 (S.D. Tex. filed Sept. 15, 2017), unless otherwise indicated.

inference instruction, would be more than is needed to respond to the sanctionable conduct. The requirement that sanctions be tailored to their purpose, along with the difficulty in determining what would be an appropriate fee award, has led the court, in its discretion, to not award the attorneys' fees and costs Pruco seeks. The reasons are set out below.

## I.      The Legal Standards

Courts have the authority to issue sanctions for discovery abuses under Rule 26 and Rule 37 of the Federal Rules of Civil Procedure, as well as the court's inherent power to protect against fraud on the judicial process. Rule 37, in relevant part, provides:

> (b) Failure to Comply with a Court Order.
>
> . . .
>
> (2) Sanctions Sought in the District Where the Action Is Pending.
>
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;

2

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(B) For Not Producing a Person for Examination. If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i) to (vi), unless the disobedient party shows that it cannot produce the other person.

(C) Payment of Expenses.  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

(1) Failure to Disclose or Supplement.  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i) to (vi).

3

FED. R. CIV. P. 37(b)–(c).   Allegations of evidence spoliation, including the failure to timely disclose information that must be disclosed, are addressed by Rule 37.   *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1408 (5th Cir. 1993).

Courts must apply Rule 37 sanctions "diligently both to 'penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (alteration in original) (quoting reference omitted).   The sanction imposed should be tailored to the particular misconduct.   *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 515 (5th Cir. 1985) ("Although the district court's discretion under Rule 37 is broad, we have repeatedly emphasized that it is not unlimited, and we have often characterized a dismissal with prejudice as a 'draconian' remedy, or a 'remedy of last resort' only to be applied in extreme circumstances.").   Rule 37(c) permits, but does not require, monetary sanctions for failing to provide information required by Rule 26(e).   Rule 37(c) requires a party who has made a discovery or disclosure response to promptly supplement that response if the party learns that the response was, or has become, incomplete or incorrect.   FED. R. CIV. P. 26(e)(1).   In determining whether to impose Rule 37 sanctions, including monetary sanctions, courts consider: (1) the fairness of the sanction; (2) the substantial relationship between the sanction and the claim; and (3) if the sanction meets "the Rule 37 goals of punishing the party which has obstructed discovery and deterring others who would otherwise be inclined to pursue similar behavior." *Chilcutt v. United States*, 4 F.3d 1313, 1321 (5th Cir. 1993).

Rule 26(g) was added to the federal rules when "evasion or resistance to reasonable discovery requests [continued to] pose significant problems."   FED. R. CIV. P. 26(g) advisory

committee's note to 1983 amendment.    Like Rule 11, Rule 26(g) imposes a certification

requirement on attorneys.  It provides:

> (g) Signing Disclosures and Discovery Requests, Responses, and
> Objections.
>
>> (1) Signature    Required;    Effect    of    Signature. Every
>> disclosure under Rule 26(a)(1) or (a)(3) and every discovery
>> request, response, or objection must be signed by at least one
>> attorney of record in the attorney's own name—or by the
>> party personally, if unrepresented—and must state the
>> signer's address, e-mail address, and telephone number. By
>> signing, an attorney or party certifies that to the best of the
>> person's knowledge, information, and belief formed after a
>> reasonable inquiry:
>>
>>> (A) with respect to a disclosure, it is complete and
>>> correct as of the time it is made; and
>>>
>>> (B) with respect to a discovery request, response, or
>>> objection, it is:
>>>
>>>> (i) consistent with these rules and warranted
>>>> by existing law or by a nonfrivolous
>>>> argument for extending, modifying, or
>>>> reversing existing law, or for establishing
>>>> new law;
>>>>
>>>> (ii) not interposed for any improper purpose,
>>>> such as to harass, cause unnecessary delay, or
>>>> needlessly increase the cost of litigation; and
>>>>
>>>> (iii)    neither    unreasonable    nor    unduly
>>>> burdensome or expensive, considering the
>>>> needs of the case, prior discovery in the case,
>>>> the    amount    in    controversy,    and    the
>>>> importance of the issues at stake in the action.
>>
>> (2) Failure to Sign. Other parties have no duty to act on an
>> unsigned disclosure, request, response, or objection until it
>> is signed, and the court must strike it unless a signature is
>> promptly supplied after the omission is called to the
>> attorney's or party's attention.
>>
>> (3) Sanction for Improper Certification. If a certification
>> violates this rule without substantial justification, the court,
>> on motion or on its own, must impose an appropriate

5

> sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

FED. R. CIV. P. 26(g).  Rule 26(g) sanctions ordinarily arise when an attorney signs "objectionable court papers or discovery objections."  *Nat. Gas Pipeline Co. of Am.*, 2 F.3d at 1410.  Although a violation of the rule requires a court sanction, it does not require that sanction to be monetary. FED. R. CIV. P. 26(g)(3) ("[T]he court . . . *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction *may* include an order to pay the reasonable expenses . . . ." (emphasis added)).  The primary goal is deterrence, and the "nature of the sanction is a matter of judicial discretion to be exercised in light of the particular circumstances."  FED. R. CIV. P. 26(g) advisory committee's note to 1983 amendment.

"When parties or their attorneys engage in bad faith conduct, a court should ordinarily rely on the Federal Rules as the basis for sanctions."  *Nat. Gas Pipeline Co. of Am.*, 2 F.3d at 1410. Monetary sanctions imposed "pursuant to civil procedures" must be "compensatory rather than punitive in nature."  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).  Such a fee "may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior."  *Id.*  "Compensation for a wrong, after all, tracks the loss resulting from that wrong."  *Id.*

But when a court can "find no sanction under the Federal Rules directly applicable to" the misconduct at issue, the court may impose sanctions under its inherent power to address misconduct.  *Nat. Gas Pipeline Co. of Am.*, 2 F.3d at 1410.  A court's ability to punish misconduct "is necessary to the integrity of the courts, for 'tampering with the administration of justice . . . involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public.'"  *Chambers*, 501 U.S. 32, 44 (1991) (quoting reference omitted).

"While this power undoubtedly exists, the threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995). This power is "interpreted narrowly, and its reach is limited by its ultimate source—the court's need to orderly and expeditiously perform its duties." *Newby v. Enron Corp.*, 302 F.3d 295, 302 (5th Cir. 2002) (footnote omitted) (citing *Chambers*, 501 U.S. at 43).

Under this power, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers*, 501 U.S. at 45–46. The sanction imposed must be "the least severe sanction adequate to achieve the desired result." *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 412 (5th Cir. 1996). "[I]nherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

## B.     Calculating a Fee Award

If a court decides that a monetary sanction is appropriate, it then needs to decide the appropriate amount to award. "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). Whether an hourly rate is reasonably depends on whether that rate is consistent with the "hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). That said,

> determining an appropriate 'market rate' for the services of a lawyer is inherently difficult. . . .  The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely.

*Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

"After determining the lodestar, the district court may then examine the *Johnson* factors to decide if appropriate adjustments to the lodestar are necessary." *Rodney*, 853 F. App'x at 924. (citing *Migis*, 135 F.3d at 1047.   The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, at 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989).

The fee amount need not be precisely tied to the time and effort needed to respond to the discovery misconduct.  "[T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).  Courts are guided by "their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* "The court may decide, for example, that all (or a set percentage) of a particular category of expenses—say, for expert discovery—were incurred solely because of a litigant's bad-faith conduct." *Goodyear*, 137 S. Ct. at 1187.  "The lodestar is presumed to reflect a reasonable attorneys' fee award, but the district court may adjust it upward or downward in exceptional cases." *League of United Latin Am. Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997).

II.     **Analysis**

A.     **Background**

To repeat what the parties know all too well, this litigation involves life insurance policies issued in 2014 to Eduardo Rosendi.  Rosendi designated his wife, Blanca Villarreal, as a beneficiary under the policy.  Villareal alleged that Rosendi died in December 2016.  She sought $26 million in policy benefits from Pruco and Transamerica under the policies Rosendi had obtained a little more than two years before his alleged sudden death was reported.  In September 2017, Pruco and Transamerica both filed suit against Villarreal.

Meanwhile, Villarreal hired Oscar Abraham to investigate her husband's alleged death in relation to the lawsuit.  In March 2018, Abraham investigated Avenue Homero 527, in Mexico City, Mexico, a building with an office associated with Rosendi.  Abraham interviewed a woman who worked in that office, Laura Hernandez.  Hernandez told Abraham that she had seen Rosendi alive over a year after Villareal alleged that Rosendi died.  (Docket Entry No. 153, at 2).  Abraham conveyed the information to John Black, Villareal's attorney and a partner at Daly & Black.[2]  A month later, in April 2018, Black signed a motion for summary judgment on Villareal's behalf.  In the motion and accompanying brief, Black represented to the court that there was no evidence that Rosendi was alive.  (Docket Entry No. 153, at 3).

This court determined that Daly & Black committed acts of sanctionable conduct—making misrepresentations to the court and "concealing potentially key information"—and imposed nonmonetary sanctions as a result of that conduct.  (Docket Entry No. 153, at 10).  The first court-imposed sanction was to vitiate work-product privilege over the part of Abraham's investigation

---

[2] The court mistakenly stated in its work-product order that the information was conveyed by Abraham to Black on May 5, 2018, but the correct date (as the court stated elsewhere in that same order) is March 6, 2018.  (Docket Entry No. 153, at 2, 8).

that occurred on or after the date he began investigating Avenue Homero 527.  This allowed the insurers to depose Abraham and ask about his investigation.  (Docket Entry No. 153, at 11).

Leading up to and at trial, the insurers sought additional sanctions to address Daly & Black's misconduct in failing to disclose information about Laura Hernandez and the statement she made about seeing Rosendi long after he had been reported as dead.  This court held a hearing and found that Daly & Black had intentionally concealed information about Hernandez and her knowledge about Rosendi.  To remedy the misconduct, this court allowed the insurers to put on testimony from Oscar Abraham about his investigation on behalf of Ms. Villareal, including testimony about the circumstances surrounding the failure to disclose Laura Hernandez and her statements to Abraham about seeing Rosendi alive.  (Docket Entry No. 241).  And at trial, the court also included the following in the instructions to the jury:

> The Insurers were not informed of any statements made by Ms. Hernandez until late in the course of this litigation.  Any statements made by Ms. Hernandez were not known to the Insurers at the time of the depositions of Eduardo Pena Nunez, Jose Luis Leon Pastor, Kim Melsha, Rebecca Zaike, Stacy Rump, Brian Heinricy, Nancy Krogstad, Laura Williams, Dan Brown, Wayne Radtke, and Richard Marquez.  When the Insurers were informed, they were unable to locate Ms. Hernandez to have her testify at trial.

(Docket Entry No. 317, at 9–10).

The jury found that Villareal had not "proven by a preponderance of the evidence that Mr. Rosendi died on December 29, 2016."  (Docket Entry No. 321, at 2).  At the end of a lengthy trial conducted by teams of experienced and excellent attorneys, the insurers avoided liability that would have cost $26 million in actual damages, punitive damages, and significant attorneys' fees.

### B.    Monetary Fees

In making the rulings that led to the adverse-inference instruction and the evidence rulings relating to the concealment of information about Laura Hernandez, the court did not exclude the

10

possibility of later imposing monetary sanctions.  The court deferred ruling on whether monetary sanctions were appropriate until after trial was complete.

Pruco now moves for an award of the fees and costs that Pruco contends were caused by Daly & Black's delayed disclosure about Laura Hernandez and the representation Black made to this court that no evidence existed that Rosendi was alive.  (Docket Entry No. 330).  The parties disagree about the authority under which the court should issue these sanctions.  Pruco argues that sanctions are appropriate under Rule 37(c).  Daly & Black counter that Rule 37(c) is inapplicable because they were not required to disclose information about Laura Hernandez, an individual they would not use "to support their claims or defenses."  (Docket Entry No. 342, at 16); *see* FED. R. CIV. P. 26(a)(1)(A)(i).  Pruco does not dispute this, arguing instead that Rule 37(c) sanctions apply under Rule 26(e) to any "interrogatory, request for production, or request for admission."  (Docket Entry No. 344, at 4).  The parties dispute whether Daly & Black's misconduct specifically fits within that Rule 26(e) framework.  In any event, Pruco argues that to the extent Rule 37(c) does not cover these circumstances, this court's inherent authority provides additional support.[3]  Daly & Black respond that to impose sanctions under its inherent authority, the court must make a specific finding of bad faith.  *See Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995).  Although the court has made this finding,[4] a court must be careful when sanctioning discovery misconduct pursuant to its inherent authority.  *See Chambers*, 501 U.S. at 45–46.

Even under the broadest source of sanctioning authority, the court finds that Pruco is not entitled to, in addition to the favorable evidence rulings and favorable adverse-inference

---

[3] Pruco does not raise the court's authority under Rule 26(g).

[4] The court has made this finding in its work-product order, for example.  (Docket Entry No. 153, at 9 ("Text messages previously produced to the court for in camera review also show that Black was aware that Abraham had spoken to a woman who had seen Rosendi alive.  This is prima facie evidence that Black knew, before he signed Villarreal's summary judgment motion, about [evidence] that could support finding that Rosendi was alive . . .")).

instructions it received during trial, the post-trial attorneys' fees it seeks. Each source of authority that a court may use to impose sanctions for misconduct requires tailoring the sanction imposed to the misconduct. *See Batson*, 765 F.2d at 515 (Rule 37); *Scaife*, 100 F.3d at 412 (inherent power). Awarding posttrial monetary sanctions in addition to the significant nonmonetary sanctions already imposed during trial goes too far.

The court found that Daly & Black, in bad faith, withheld information during discovery. It then imposed severe sanctions before trial (vitiating work product protection) and during trial (admitting evidence of the statements Hernandez had made to Abraham about seeing Rosendi alive). The court allowed evidence of the concealment and included an adverse-inference instruction in the jury instructions. These measures were designed to further the goals of deterrence and punishment for discovery misconduct. *See Chilcutt*, 4 F.3d at 1324–25; *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993) (instructing the district court to consider on remand "[w]hat conduct is being punished or is sought to be deterred by the sanction").

The issue is whether Pruco should receive an award of the fees it incurred solely in response to attorney misconduct the court has found and already addressed. Pruco argues that $556,877.92 is an appropriate award because there are eight categories of work it would not have had to do but for Daly & Black's misconduct: (1) sending an investigator to locate Ms. Hernandez; (2) preparing 12 letter briefs on the issue; (3) participating in multiple hearings; (4) responding to Daly & Black's and Susman Godfrey's motions to withdraw; (5) analyzing and incorporating new evidence; (6) preparing for the depositions of witnesses designated to rebut Mr. Abraham's testimony but that were later withdrawn; (7) obtaining unredacted copies of Mr. Abraham's reports; and (8) researching the sanctions issue. (Docket Entry No. 330, at 3–6). The court

considered each basis and finds that they do not justify the additional sanctions sought, given the substantial sanctions already imposed.

First, the insurers argue that had they known of Ms. Hernandez's statements sooner, they could have avoided the fees and costs incurred in trying to find her later. This argument is speculative. It assumes that had the insurers known of Laura Hernandez's statement sooner, they would have found her at the same location at Avenue Homero 527. The insurers already knew about the Avenue Homero 527 address and its relationship to Rosendi when Abraham investigated the location and talked to Hernandez. Like Abraham, the insurers had the opportunity to visit that location and talk to possible witnesses, but the insurers did not do so. Additional monetary sanctions are not warranted to compensate Pruco for this work.

The second category is the fees Pruco incurred in preparing briefs and motions on matters related to Daly & Black's misconduct. *See Shumpert v. City of Tupelo*, 905 F.3d 310, 325–26 (5th Cir. 2018) (affirming a $3,000 award of costs and fees associated with the defendants' motions to compel after the plaintiffs had failed to timely respond to interrogatories and requests for production); *Timms v. LZM, L.L.C.*, 657 F. App'x. 228, 231–32 (5th Cir. 2016) (per curiam) (a fee-shifting award, including the fees to take a deposition needed because of opposing counsel's failures to comply with discovery orders, was not an abuse of discretion). Pruco states that $97,653.00 in fees are attributable to its motions for sanctions. Pruco has provided documentary support for the amount of fees it incurred in litigating Daly & Black's misconduct, and for the causal link between that misconduct and the fees incurred. The court does not dispute that Pruco did significant work. But Pruco benefited from that work in the form of the sanctions this court imposed on Daly & Black before and during trial. Pruco has not sufficiently shown that monetary sanctions on top of the nonmonetary sanctions already imposed are justified.

13

Third, Pruco seeks sanctions in the form of the fees it incurred in repeatedly seeking court intervention to obtain information Daly & Black should have provided earlier, and then to revise and change its trial preparation based on that new information.  This case involved multiple issues and multiple hearings.  The parties raised and fought over many issues.  Discovery was complicated from the outset, in part because much of the evidence and many of the witnesses were outside this country, and in part because COVID complicated the work needed to conduct and respond to discovery.  The parties, particularly Pruco, sought hearings on a variety of discovery disputes and legal challenges to the relief sought and the defenses raised.  The court held many hearings over the three years this case was pending before it was tried.  It is very difficult, despite Pruco's diligent efforts, to separate the fees for motions and hearings on issues relating only to Daly & Black's misconduct from fees for motions and hearings on other issues.  The court cannot accurately or reliably discern from the insurers' attorney declarations what fee amounts are attributable to the costs of preparing for only those portions of the hearings that related to misconduct.

Fourth, Pruco argues that additional fees are warranted because of the efforts it had to put into analyzing and responding to Daly & Black's and Susman Godfrey's motions to withdraw.  This argument is unavailing.  The Susman Godfrey motion to withdraw was unopposed and granted quickly.  (Docket Entry Nos. 154, 155).  There is no basis to award fees or costs relating to that motion.  Permitting Daly & Black to withdraw was also simple.  As the court held:

> Ms. Villarreal asked to substitute new counsel, her former counsel agreed to withdraw, and the only step left in this case is trial. . . . Ms. Villarreal's former counsel followed the Southern District of Texas Local Rules for seeking to withdraw and the record discloses no need for conditions on their withdrawal. . . . The court finds no good reason for forcing an unwilling client to work with an unwilling lawyer under these circumstances.

(Docket Entry No. 168).  The court will not award Pruco fees or costs relating to the motions to withdraw.

Fifth, Pruco's argument that it had to analyze and incorporate new evidence suffers from the same issues as the third category—this was a complicated case, for many reasons, misconduct aside.  The court does not find it reasonable to award fees based on the inherent difficulties of trial work in general and of this case in particular.

Sixth, the court will not award fees for preparing for the deposition and trial testimony of attorney John Black and investigator Kevin Pipkins.  Ms. Villarreal designated these individuals as "fact witnesses" to "rebut" Mr. Abraham's testimony about Ms. Hernandez.  These witness designations were withdrawn on the eve of their court-ordered depositions, after Pruco had prepared for those depositions.  The testimony of those witnesses was potentially relevant for purposes besides Black's conduct, including Ms. Villareal's dispute with Mr. Abraham and his subsequent work for Pruco.  This category of work does not bear a sufficiently tight connection to the attorney misconduct to justify awarding the attorney's fees to prepare for these depositions as a sanction for the attorney misconduct at issue.

Seventh, the court sees no basis to awarding all the fees Pruco asks for its attempts to obtain unredacted copies of Mr. Abraham's reports and to have them admitted over objections asserted on behalf of Ms. Villareal.  The work-product issue was not clear-cut, and, apart from any misconduct, required analysis by counsel for both sides, and by the court, as to what was covered by work-product or other protections or privileges.  Furthermore, the fee award sought for this work is related to the sanctions already imposed before and during trial.

Eighth, Pruco seeks sanctions in the amount of fees for the time it spent in researching, briefing, and arguing its motions for sanctions, including its motions to strip evidence of work

15

product or other protection or privilege, and its motion for an adverse-inference jury instruction. Again, Pruco already reaped the benefit of the work it did here in the form of various significant sanctions for Daly & Black's misconduct.  But Pruco also faces another problem—the court cannot appropriately tailor a monetary sanction.

Pruco provides with its motion the sealed declarations of two of its attorneys—James Doyle, on behalf of Doyle, Restrepo, Harvin & Robbins, L.L.P., and Michael Duvall, on behalf of Dentons U.S., L.L.P.  Both firms represented Pruco over the course of this litigation.  The attorneys diligently tried to break down the hours they spent, the lawyers and other professionals at each firm who worked on the litigation, and the hourly rates for each timekeeper.  But even with the declarations, the court cannot reliably or accurately determine the time that Pruco had to expend *solely* because of attorney misconduct.  For example, Doyle and Duvall seek fees for the work their firms performed for a hearing the court held on December 13, 2021.  This hearing certainly involved Daly & Black's misconduct.  But that is not all that was at issue.  The court also ruled on various motions and addressed various trial matters, such as the amount of time for opening statements and the presence of a Spanish interpreter.  (Docket Entry No. 241).  Those matters would have been addressed regardless of Daly & Black's misconduct.

In short, the court finds that a fee-award monetary sanction is not justified. The sanctions already imposed appropriately addressed the misconduct at issue.  Pruco's motion for fees and costs, (Docket Entry No. 330), is denied.


SIGNED on October 25, 2022, at Houston, Texas.


Lee H. Rosenthal
Chief United States District Judge